**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1412
_____

In re: RESOLUTE ENERGY CORPORATION SECURITIES LITIGATION

William A. Langdon, Jr.,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(District Court No. 1:19-cv-00077)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on December 14, 2021

Before: GREENAWAY, JR., KRAUSE, and PHIPPS, *Circuit Judges*

(Filed: January 27, 2022)

_____

**OPINION**[*]
_____

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Appellant William Langdon challenges the District Court's dismissal of this consolidated securities fraud class action suit, in which he alleges that Resolute Energy Corporation ("Resolute") and members of its Board of Directors (collectively, "Appellees") violated the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a); 17 C.F.R. § 240.14a-9, and breached their fiduciary duties. Because we agree with the District Court that Appellant failed to adequately plead loss causation, we will affirm.

## I. DISCUSSION[1]

Resolute was an oil and gas company that held assets in the Delaware Basin in west Texas. Resolute merged with Cimarex Energy Company ("Cimarex") on March 1, 2019, allegedly after capitulating to activist investors who pressured Appellees to sell the company. In his amended complaint, filed on April 13, 2020, Appellant[2] alleged that, by authorizing the filing of a materially incomplete and misleading Proxy statement with the Securities and Exchange Commission ("SEC"), which was used to solicit stockholder votes in favor of the merger, Appellees violated Section 14(a) of the Securities Exchange Act and SEC Rule 14a-9, which prohibit corporations from issuing proxies containing

---

[1] The District Court had jurisdiction under 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337, and we have jurisdiction under 28 U.S.C. § 1291.

[2] Appellant was appointed Lead Plaintiff after the District Court consolidated three lawsuits filed by Resolute stockholders in May 2019. The District Court dismissed Appellant's original consolidated complaint, filed on June 14, 2019, for failure to state a claim, finding that Appellant failed to adequately plead loss causation, as well as material misrepresentations and omissions in the Proxy, and granted him leave to amend.

material misrepresentations or omissions. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9.[3] The alleged misrepresentations included statements suggesting that the merger was fair to Resolute stockholders, that the merger consideration represented a premium relative to Resolute's standalone value, that the resulting combined company would be better positioned to generate earnings and growth, and that Goldman Sachs, one of Resolute's financial advisors, had opined on the fairness of the merger consideration as structured (when Goldman did not offer an opinion on the fairness of the deal's proration procedures). Appellant alleged as omissions, *inter alia*, the lack of certain financial information pertaining to Resolute and Cimarex.

The District Court determined that Appellant failed to adequately plead loss causation, "*i.e.*, a causal connection between the material misrepresentation and the loss," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005), because under the theory he advanced, the real cause of his alleged loss—the difference between the "true value" of his Resolute shares and the merger consideration he received—was the Board's failure to negotiate a better deal, not the Proxy's alleged misrepresentations and omissions. JA 8–9. The Court then granted Appellees' motion to dismiss and declined to exercise supplemental jurisdiction over Appellant's state law claims.

---

[3] The amended complaint also alleged a violation of Section 20(a) of the Securities Exchange Act, which establishes derivative liability for supervisors of those who commit an independent violation of federal securities laws. 15 U.S.C. § 78t(a). Because violations of Section 20(a) must be premised upon a predicate violation of another federal securities law, *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 142 (3d Cir. 2004), we focus our analysis on Appellant's Section 14(a) claim.

Appellant contends that he sufficiently alleged loss causation by pleading that the omission of material information from the Proxy "obfuscat[ed] the true value of Resolute shares, causing stockholders to be uninformed and misled into accepting an unfair deal that undervalue[d] the company by at least $3.50 per share," and the District Court erred when it found that this was not a cognizable theory of loss causation. Opening Br. 16–17. On *de novo* review, "accept[ing] as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view[ing] them in the light most favorable to the non-moving party," *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007) (citation omitted), we disagree.

To state a Section 14(a) claim, Appellant needed to plead, among other things, that the alleged misrepresentations and omissions in the Proxy "caused [him] injury." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007).[4] A complaint fails to adequately plead loss causation if it does not "provide[] the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation." *Dura Pharms.*, 544 U.S. at 347.

---

[4] The District Court reviewed the allegations in the amended complaint under the general pleading standard set out in Rule 8 of the Federal Rules of Civil Procedure. Appellant contends that this was proper because his claims sound in negligence. Appellees argue that all Section 14(a) claims, even those that sound in negligence, are subject to the heightened pleading requirements of the Private Securities Litigation Reform Act (PSLRA). We have not yet determined whether the PSLRA's heightened pleading standard applies to Section 14(a) claims that sound in negligence, *see Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 709 n.8 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1284 (2021), and we need not do so now, as Appellant has not satisfied even the general pleading standard.

Appellant's theory of loss causation—that the Proxy contained material misrepresentations and omissions that prevented stockholders from understanding the true value of both Resolute and Cimarex and induced them to sell their shares for inadequate consideration—fails on both counts.[5] First, Appellant has not alleged that the market price of his Resolute shares was greater than the market price of whatever combination of Cimarex stock and cash he received in the merger.[6] This is perhaps because Resolute was trading at about $30 per share before the merger announcement, and Cimarex agreed to acquire Resolute in a cash and stock transaction valued at $35 per share, so the merger consideration was approximately 15 percent greater than Resolute's market value.[7] Although Appellant has pleaded a specific dollar amount by which Resolute was undervalued, he has not explained where that number comes from, and the

[5] Appellant's theory is premised in part on the fact that the Proxy represented that stockholders could choose among three consideration options (Cimarex common stock, $35 per share in cash, or a combination of cash and Cimarex common stock), but ultimately "no stockholder was able to receive all cash consideration no matter which election he or she made" because "insufficient funds had been set aside." JA 506. That said, Appellant also contends that the nominal value of $35 per share "also undervalued Resolute shares by more than $3.50 per share." *Id.*

[6] As the District Court astutely noted, we can deduce that Appellant received at least some Cimarex common stock as consideration in light of his allegation that no Resolute stockholder was able to receive all cash in the merger.

[7] Although the amended complaint does not state the market price of Resolute shares, we take judicial notice of market price as reflected in a contemporaneous *Reuters* article, as the District Court did. JA 34 (citing Shanti S. Nair & Debroop Roy, *Cimarex to Pay $1.6 Billion for Fellow Permian Firm Resolute*, REUTERS (Nov. 19, 2018), https://www.reuters.com/article/us-resolute-energy-m-a-cimarex-energy/cimarex-to-pay-1-6-billion-for-fellow-permian-firm-resolute-idUSKCN1NO1CW); *see also In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 264 n.3 (3d Cir. 2005) (citing *Ieradi v. Mylan Lab'ys, Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000)) (taking judicial notice of stock prices).

5

only factual allegations supporting his assertion that the true value of Resolute shares was greater than the merger consideration are wholly speculative.[8] *E.g.*, JA 526 ("The Merger Consideration was inadequate in light of the Company's recent financial performance and future prospects prior to the transaction.").

In addition, Appellant has not set forth a viable scenario in which he and the other Resolute stockholders could have actually recovered the "true value" of the Resolute stock they owned. He does not allege, for example, that but for the alleged misrepresentations and omissions in the Proxy statement, Resolute stockholders would have voted the merger down and the market value of their Resolute shares would have been greater than the market value of the merger consideration they received. Nor has he pleaded that, had the stockholders rejected the merger, the Board would have secured a better offer from either Cimarex or another company. *See Tse v. Ventana Medical Sys., Inc.*, 297 F.3d 210, 220–21 (3d Cir. 2002) (acknowledging the "lost opportunity" theory of loss causation). Instead, Appellant specifically disclaims reliance on both of these theories, explaining that the loss he suffered was "the difference between the actual Resolute share value at the time of the transaction and the actual consideration received," but declining to detail how he could have realized that "actual" share value. Reply Br. 9.

---

[8] Even if the price of Cimarex stock was inflated at the time of the merger, as Appellant alleges, that fact alone is not sufficient to plead loss causation. *See Dura Pharms.*, 544 U.S. at 342. ("[A]n inflated purchase price will not itself constitute or proximately cause the relevant economic loss," as "the plaintiff has suffered no loss [at the moment of the transaction]; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value.").

Because he has failed to allege a plausible path by which Resolute stockholders could have obtained the supposed "actual value" of their Resolute holdings if not for the alleged misrepresentations and omissions in the Proxy, Appellant has failed to sufficiently plead loss causation. *See Beck v. Dobrowski*, 559 F.3d 680, 684 (7th Cir. 2009) (rejecting the argument that "had it not been for misleading proxy solicitations," shareholders would have rejected the merger and "reaped the economic benefits of continuing to own" their shares.). In sum, we perceive no error in the District Court's order granting Appellees' motion to dismiss.[9]

## II.    CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.

---

[9] Although not contested by Appellant, we note that the District Court did not err in dismissing his Section 20(a) claim, as liability under that section requires a predicate violation of the Securities Exchange Act, *see Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 159 n.21 (3d Cir. 2004), nor did the Court err in "declin[ing] to exercise supplemental jurisdiction over state claims after it dismisse[d] a federal claim on which its jurisdiction is based," *Mauthe v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019).